**STONE v. ADAMS NAT. BANK. (No. 7188.)**

(Court of Civil Appeals of Texas. San Antonio. June 16, 1924. Rehearing Denied July 2, 1924.)

**1. Bills and notes ⬅➡537(6)—Notice to purchaser of condition held for jury.**

Whether bank purchasing note had notice that it was executed and delivered, on condition that it should not become binding on maker until cotton warehouse was constructed by payee, as agreed, *held* for jury.

**2. Banks and banking ⬅➡116(4)—Notice to cashier of condition on which note subsequently purchased by bank was to become binding held notice to bank.**

Notice by maker to cashier of bank, purchasing note given at the bank, that it was executed on condition that it should not become binding until warehouse was constructed by payee *held* notice to bank, as against contention that cashier was not acting in capacity as such.

Appeal from District Court, Medina County; R. H. Burney, Judge.

Action by the Adams National Bank against W. C. Stone. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

De Montel & Fly, of Hondo, for appellant. Lewright & Lewright, of San Antonio, for appellee.

SMITH, J. On February 8, 1921, appellant, Stone, executed his promissory note for $1,000, payable on October 1, 1921, to the order of the Planters' Bonded Warehouse Company. On February 26, 1921, the Adams

National Bank, of Devine, Medina county, purchased the note from the warehouse company, at a discount of $47.78, and in payment thereof issued to the latter its non-interest-bearing certificate of deposit for the appropriate amount, payable to the order of the warehouse company on November 1, 1921, which was a month later than the due date of the note. The warehouse company indorsed the note in blank, without recourse, and in this condition the paper passed into the hands of the bank, along with other notes of the same character, aggregating, approximately, $5,000. Stone refused to pay the note, and the bank brought this suit. Upon a trial, the court below directed the jury to return a verdict in favor of the bank, which was done, and from the judgment entered thereon, Stone has appealed. The appeal is presented upon three propositions of law, predicated upon four assignments of error, in all of which complaint is made of the action of the court in directing a verdict. It is vigorously contended that there was ample evidence to take the case to the jury.

The note in question, with others like it given for a like purpose by citizens of Devine and vicinity, was executed as consideration for stock in the warehouse company, which obligated itself to construct a cotton warehouse at Devine. The stock was sold and the note procured by the company under and by virtue of its promise to erect the warehouse; and the note was delivered to the company, or its representatives, with the understanding that the obligation would not become effective or binding upon the maker until the warehouse had actually been constructed. These matters were appropriately pleaded by Stone in this case, and in answer to these pleadings the bank set up its claim of innocent purchaser.

[1] It appears that there was testimony to the effect that the supposed plans of the warehouse company were generally known to the people in Devine, including the officers of appellee bank, whose president, in fact, introduced the warehouse company's agent to Stone, and explained the object of the agent's business in the community. In this connection, Camerer, the agent, told Stone, in the presence of the bank's president, that the notes for stock in the company "will be paid after the bonded warehouse is built." Nothing definite was done, however, at this meeting, but some three weeks later Stone executed the note here sued on. About an hour before doing so he went to appellee bank and discussed the matter with the latter's cashier, Briscoe. Stone told Briscoe that he (Stone) "was going to take $1,000 stock of the Planters' Bonded Warehouse Company," that the agent of the latter told him that these warehouse notes were to be drawn so as to "become due one month after

the warehouse was built, or completed," which was to be in time for the 1921 cotton crop. Stone testified further that he told Briscoe, the cashier, in this conversation, that "the only way I would ever give a note to the bonded warehouse company was according to what he told me down there—that is, what Mr. Camerer told me—that they were taking notes and that they would build the warehouse in Devine, and it would be completed in time to take care of that year's (1921) cotton, and that if they did not build the warehouse my note would be no good."

In this conversation, here stated according to Stone's version, which is substantially denied by Briscoe, the latter told Stone he had investigated the responsibility of the promoters of the warehouse company, and that "they were all worthy people, and he said I could do nothing wrong in signing the note." Following this conversation with the bank's cashier, Stone went out on the street, met the warehouse company's agent, and executed the note in question, which he "turned over to Mr. J. C. Thompson for him to hold. I told him to hold it in escrow until the warehouse was built." Thompson, however, turned the note over to the warehouse company's agent, who a short time afterwards negotiated the sale of it to the bank, which was represented in the negotiations by its said cashier, Briscoe. In these negotiations the warehouse company's agent offered to enter into a written contract with the bank, agreeing to commence the construction of the proposed warehouse not later than 90 days from the date of the receipt of the certificate of deposit issued to it by the bank in discounting the note. The proffered contract also obligated the bank to "use their efforts to promote and further the sale of stock in the company." While the bank declined to enter into this written agreement, the fact of its tender to the bank is here adverted to because the circumstance must have served to emphasize the knowledge the bank had of the often-stressed purpose of the warehouse concern not to press the collection of the notes until the warehouse was constructed. The idea is still further emphasized by the circumstance that the certificates of deposit issued by the bank in the purchase of the notes did not bear interest, and were not effective until a month after the date of the maturity of the notes. We have set out only the high points of the testimony upon this phase of the case, but we think that set out is sufficient to raise the issue of notice to the bank of the fact that the note in question was executed and delivered upon the condition that it should not become effective or binding upon the maker until the warehouse was constructed, as agreed. For this reason we conclude that the court erred in taking that issue away from the jury, and directing a verdict.

[2] It is urged by appellee that the conversation between Stone and Briscoe, the bank's cashier, disclosed that at such time Briscoe was not acting "in his capacity of officer of the bank"; that he was not engaged in the bank's business at the moment, but was acting as a friend of Stone in a joint individual enterprise. We overrule this contention, however. It is apparently true that, primarily, the interest the bank's officers took in the warehouse company's plans and movements was one of concern for the public and the advancement of the community's welfare, and we do not subscribe to the contention of appellant that the record raised an issue of fraud against the bank. But we think it clear that when Stone went to the bank's place of business, and there communicated to its active manager the facts disclosed by the record here, all the notice the incident carried to Briscoe was thereby effectually lodged with the bank.

For the error in directing a verdict, the judgment is reversed, and the cause remanded for another trial.